Reversed and remanded for a new trial on damages only.

STATE OF NEW JERSEY IN THE INTEREST OF S.M.,
JUVENILE-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1986—Decided July 8, 1986.

Before Judges MICHELS, GAULKIN and STERN.

*S. Karl Mohel,* Assistant County Prosecutor, argued the cause on behalf of appellant, State of New Jersey (*Edward J. Turnbach,* Ocean County Prosecutor, attorney).

*Carolyn A. Parks,* Assistant Deputy Public Defender, argued the cause on behalf of respondent, S.M. (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

The opinion of the court was delivered by

STERN, J.S.C. (temporarily assigned).

We granted the State leave to appeal the denial of its application to waive jurisdiction in this case from the Chancery Division, Family Part, to the Law Division, Criminal Part, pursuant to *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2. Respondent, S.M., a juvenile, was charged with delinquency under *N.J.S.A.* 2A:4A–23, by committing an act which if committed by an adult would constitute the crime of murder in violation of *N.J.S.A.* 2C:11–3a(1), (2). The critical issue for resolution is whether the juvenile sustained his burden of preventing waiver under *N.J. S.A.* 2A:4A–26.

That statute, adopted as part of the 1983 Code of Juvenile Justice, provides, in subsection a, that upon motion of the prosecutor, the court "shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the family court ..." if it finds, after hearing, that:

> (1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and

> (2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:

>> (a) Criminal homicide other than death by auto ...[1]

The statute further provides:

> However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.

*See also R.* 5:22–2(b)(1), (2)(A) and (4).

I

On November 12, 1985 the body of 13–year old B.H. was found lying face down in a creek near Garfield Avenue in Toms

---

[1] We need not consider any other subsection possibly relevant in light of our disposition.

River. The victim was nude from the waist down, there was a bag over her head and her body was partially covered by a white sheet-like cloth.

A subsequent examination by a member of the Ocean County Medical Examiner's office revealed that the victim had suffered injuries to the head and face from a blunt instrument causing massive hemorrhaging and some tearing of the brain tissue. The examination revealed that the victim's face was flattened from blows with a fist to the face. In addition, there were marks on the victim's face and right shoulder from being dragged, bruise marks on her right breast caused by severe squeezing and marks on her right shoulder, knee and forearm. Her right kidney was injured by blows from a fist, her hymen was torn, her rectum was dilated and her knuckles and wrist were swollen. The actual cause of death was "asphyxia due to drowning, associated with lots of injuries to the brain." The death was classified as a homicide.

Investigation of the homicide ultimately focused on the juvenile. Drag marks were traced from the area where the victim was found to a wooded area adjacent to the juvenile's residence and into his backyard.

An officer discovered a pair of girl's panties and a blanket behind the pool on the parents' property, and during a consent search a tool box marked with defendant's name and address was discovered. Articles of clothing belonging to the victim were in the box.

S.M. subsequently gave a formal taped statement with respect to his involvement in the death of B.H. At that time he stated that after killing the victim, he gathered up her clothes and put them in the tool box and then attended a birthday party for a girl he had been dating.

S.M. was born on July 21, 1970. Therefore he was over 15 at the time of offense and approximately 15½ at the time of the hearing. "Probable cause" is not contested.

At the waiver hearing Dr. Harriet Hallander, a clinical psychologist, testified for S.M. She indicated that his "condition itself would generally be regarded as a treatable one, to the extent that mental illnesses do respond to intervention." She stated her belief that his behavior "does not fall within the pattern of random violent juveniles who has no regard for the taking of a life," and indicated her belief that the juvenile's behavior crime occurred "in the context of [his] serious mental condition." Dr. Hallander was questioned about resources available to the Family Court. She concluded that S.M.'s mental condition could be "addressed by mental health professionals in an appropriate way" and that he could benefit from treatment at the Bordentown Medium Security Facility. She concluded that if the "mental condition" is "going to remit," and "if the mental state is going to be treated, it will happen— probably happen in three years." Dr. Hallander also found that defendant was remorseful and concluded, "I can say that the profile characteristics are such that the chance of a rehabilitation is probable. I cannot say with certainty, and I don't think that anyone can."

Gregory Ackles, a counselor at the Juvenile Medium Security Facility in Bordentown, testified that since the inception of the homicide unit at Bordentown in 1979 only one juvenile out of 14 or 15 in the program had returned to the prison system and that was due to a technical violation of parole. He stated that the average time spent in the program for juveniles convicted of murder was eight to ten years. He also stated that it takes three years before a juvenile makes "marked improvement," and five to six years, on the average, for "total improvement." [2]

The juvenile had pled to a charge of aggravated assault with a BB gun for which he received a nine-month continuance on June 5, 1985, approximately six months before the hearing.

---

[2]Despite the fact that a juvenile must be 14 at the time of offense in order to secure involuntary waiver, the State does not read the statute, in light of this testimony or otherwise, to require waiver in all homicide or murder cases.

Following the hearing the judge found that there was probable cause to believe that defendant committed the offense, but denied waiver. The judge noted that "murder is one of the less deterrable and least repeated crimes." Against the fairly "light deterrent value" he weighed "the probability of rehabilitation in the juvenile system" and found that in the case of S.M., "there is no known life style to change, there is only the stark reality of a horrible, vicious senseless murder." The judge concluded that the juvenile

> ... does not appear to me nor do I perceive him as being somehow outside the realm of childhood, the realm in which our civilization and our culture believe that people are malleable are instructable, are diatable [sic], and can be socialized. I do not perceive this defendant as outside of my concept of child. He's not certainly the urban man/child in his history, or in his appearance. He's certainly not the sociopath who has traveled the world. It's hard to believe that he has done the horrible, that he has committed a crime which causes loss of sleep, if not nightmares. But he retains the demeanor of a child, the body of a child, and one prays the moldability, the malleability of a child, someone who is a fit subject for what is good and positive and loving in our justice system. I find specifically, that he can be rehabilitated, that he probably will be rehabilitated within the juvenile justice system, and I decline to waive jurisdiction.

## II

On this appeal the State contends that the trial court did not properly apply the standards set forth in *N.J.S.A.* 2A:4A–26. It argues that the court abused its discretion (1) by finding that there was a probability that defendant could be rehabilitated prior to his 19th birthday, as defendant did not make the requisite showing of such probability; (2) by finding that the probability of rehabilitation substantially outweighed the interests of the public, and (3) by "substituting its own predispositions toward the ultimate issue of the proceedings rather than the statutes and case law."

*N.J.S.A.* 2A:4A–26 was adopted as section seven of the Code of Juvenile Justice, *L.* 1982, *c.* 77, effective December 31, 1983. We find of significance the statement of the Senate Judiciary Committee with respect to that section:

As amended by the committee, once it is established by the prosecution that the alleged delinquent act would constitute a serious offense such as homicide, robbery or arson, no additional showing is required in order for waiver to occur. With regard to other delinquent acts eligible for waiver, the prosecution must show that the nature and circumstance of the charge or the prior record of the juvenile are sufficiently serious that the interests of the public require waiver. However, if the juvenile can show that the probability that he can be rehabilitated as a juvenile prior to reaching the age of 19 substantially outweighs the reasons for the waiver, the waiver shall not be granted. There is also a provision that the prosecutor seeking waiver must file the basis for his motion in a reasonable time after filing of the motion. The court deciding a waiver motion shall state on the record the reasons for its decision. The Attorney General is to compile information concerning waiver in order to develop guidelines as to those situations and factors which might compel or mitigate against the waiver. In addition, the requirement that this information be on record serves to underscore the intention that this section not be either capricious or applied in a pro forma manner, but rather, that waiver be considered in each individual case in a thoughtful and extensive manner. Moreover, this section is intended to provide a more reserved and realistic procedure for waiver and does not signify a policy of wholesale waiver of juveniles to adult court.[3]

As both the statute and statement make clear, in a homicide case the State must merely show probable cause, and the juvenile has the burden of showing "that the probability of his rehabilitation" prior to reaching the age of 19 "substantially outweighs the reasons for waiver...." Once the court has found that defendant was over 14 and that there is probable cause that the juvenile committed an offense embodied in *N.J.S.A.* 2A:4A–26a(2)(a), the judge must determine whether the probability of rehabilitation before the age of 19 exists and, if so, whether it "substantially outweighs" the reasons for waiver. We must determine whether the Family Court properly applied the appropriate standards. Here, there is little dispute as to facts and credibility. *Compare State v. Johnson*, 42 *N.J.* 146, 162 (1964).

The governing principles concerning waiver under the predecessor statute, *N.J.S.A.* 2A:4–48, were set forth in *State v. In*

---

[3]Following adoption of this waiver statute the Legislature made clear that a juvenile could not be subjected to the death penalty. *N.J.S.A.* 2C:11–3, as amended by *L.* 1985, *c.* 478.

*the Interest of C.A.H. & B.A.R.*, 89 *N.J.* 326 (1982). Under that statute, waiver was required where the juvenile was over 14 years of age, had committed a crime of a certain character, and where "the protection of society, together with the absence of any reasonable prospects of rehabilitation of the juvenile by the time he reaches 21 years of age call for waiver...." *C.A.H., supra*, 89 *N.J.* at 330. Justice Handler, writing for the Court, indicated that deterrence, both in its individual and general application, was the "key" to proper understanding of the statutory concept of "adequate protection of the public." *Id.* at 334. He stated that "in the context of a waiver determination the demands for deterrence are strengthened in direct proportion to the gravity and harmfulness of the offense and the deliberateness of the offender." *Id.* at 337. Where the crime was "purposeful, calculated and aggressive" the need for deterrence was underscored. *Id.* at 338. In *C.A.H.* the Court found that the trial court committed error by not sufficiently considering the gravity of the crime or the subject of deterrence "either as punishment for and deterrence of the individual juvenile or as a means of discouraging others from committing similar crimes in the future." *Id.* at 338. Further, in respect of expert testimony concerning probability of rehabilitation, the Supreme Court found error where the experts' opinions did not sufficiently deal with the juveniles' records or backgrounds or the "inferences that spring from the nature and surrounding circumstances of the crimes committed" and did not "relate such factors to the individual juvenile's capacity for genuine rehabilitation." *Id.* at 342.

In *C.A.H., supra*, the Supreme Court also wrote that defendant must show a "realistic prospect" for rehabilitation. 89 *N.J.* at 332. The Court discussed the nature of testimony offered by psychiatrists and psychologists concerning the prospects of juvenile offenders, and noted that "such opinions will frequently be strongly cast in favor of juvenile treatment." *Id.* at 345 *n.* 5. The Court noted that a lower court should consider both the facilities and resources available to the juvenile and the

amenability of the particular juvenile defendant to rehabilitation. *Id.* at 339–340. However, with respect to the latter, the Court counseled that the experts must take into consideration the gravity of the crimes and the pattern of criminal behavior, *id.* at 341, as well as past record and background of the juvenile. *Id.* at 342.[4] Finally, the Court concluded that the waiver determination was to be based on the weighing of "the need for deterrence against the prospects of rehabilitation," and concluded

> It is upon this evidential axis that the waiver decision turns. As the need for deterrence increases with the evidential accretion of such factors as the commission of a grave offense, deliberateness of conduct, an older juvenile offender, a past record of infractions, and a background of delinquency and exposure to the juvenile justice system, the more sharply will the decision veer in the direction of deterrence and waiver. It follows that with the heavy accumulation of this kind of evidence on the scales of deterrence, the proofs concerning the prospects for rehabilitation must become proportionately strong, cogent and persuasive in order to turn the decision back toward rehabilitation and nonwaiver.

> Consistent with this approach, courts have recognized time and time again that the gravity of the crime, perhaps the most obvious and potent factor in favor of deterrence, may serve to overcome problematic or debatable evidence of rehabilitation. [89 *N.J.* at 344–345] [footnote omitted].

In this case the judge defined rehabilitation as "changes in the individual which will prevent a reoccurrence of this or any other serious crime." He then summarized the testimony offered by the expert witnesses, noting that, "Mr. Ackles anticipates rehabilitation in virtually every case during the time the juvenile is incarcerated and in his program," but that "[h]e does not anticipate such rehabilitation by age nineteen in almost any case." However, the judge noted that, given the anticipated time of eight to ten years in the program for juveniles convicted of murder, none would be rehabilitated by age 19 and, had the

---

[4]*N.J.S.A.* 2A:4A–26a(3), requiring a showing by the State concerning the nature and circumstances of the charge or the prior record of the juvenile, does not apply where the offense charged, as here, is embodied in *N.J.S.A.* 2A:4A–26a(2)(a). *See also R.* 5:22–2(b)(2)(A) and 2(b)(3).

Legislature intended that waiver occur in every murder case, it would have so provided in the statute.

The judge further noted that Dr. Hallander had concluded that defendant's action was due to a "treatable illness" and that, therefore, for this juvenile "the time schedule for rehabilitation can be drastically speeded up as the treatment proceeds." Hence, the judge concluded that S.M. "can be rehabilitated, that he probably will be rehabilitated within the juvenile justice system, and I decline to waiver jurisdiction."

We conclude that the Family Part did not properly place the burden on the juvenile or adequately apply the balancing test under *N.J.S.A.* 2A:4A-26.

■ As noted in *C.A.H., supra,* the Supreme Court referred to the "evidential axis" which a court must consider in the balancing stage of a waiver decision and indicated that "... As the need for deterrence increases with the evidential accretion of such factors as the commission of a grave offense, ... the more sharply will the decision veer in the direction of deterrence and waiver." [*Id.* at 344–345].

■ We believe that this principle survives adoption of *N.J. S.A.* 2A:4A-26, which prevents waiver in a homicide case only where "the juvenile can show that the probability of his rehabilitation ... prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver...." In fact, *N.J.S.A.* 2A:4A-26, unlike the predecessor statute, places a burden on the juvenile to show that the probability of rehabilitation "substantially outweighs the reasons for waiver." This is particularly true with respect to an offense embodied in *N.J.S.A.* 2A:4A-26a(2)(a) because the provisions of *N.J.S.A.* 2A:4A-26a(3) do not apply.

The case involves allegations of a heinous murder, and probable cause has been shown. In these circumstances, we conclude that the judge of the Family Part did not sufficiently respect the statutory criteria embodied in *N.J.S.A.* 2A:4A-26,

placing the burden on the juvenile to show that the probability of rehabilitation "substantially outweighs" the reasons for waiver, which include both general and specific deterrence.[5]

Accordingly, the order denying waiver is reversed, and the matter is remanded to the Law Division, Ocean County, for disposition as an adult criminal case.

---

[5]If convicted of murder as an adult, the juvenile faces a mandatory sentence of 30 years without parole. *See N.J.S.A.* 2C:11–3b.